UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

RONNIE BOONE,

            Plaintiff,                      Case No. 2:16-cv-271

v.                                                 Honorable Janet T. Neff

DUNCAN MACLAREN, et al.,

            Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Ronnie Boone, a state prisoner currently confined at the Kinross Correctional Facility (KCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Duncan MacLaren, Supervisor S. Lewis, Director Shawn McMullen, Deputy Warden Kathy Olsen, Grievance Section Manager Richard D. Russell, Grievance Coordinator L. Berlinger, Aramark Correction Services, and Trinity Service Group.

In Plaintiff's complaint, he alleges that on June 19, 2014, Aramark employees were serving french fries for lunch, but ran out before the end of the lunch period. In an attempt to hurry and prepare more fries, Aramark employees served the fries before they were finished cooking. Consequently, Plaintiff was given half cooked fries. On June 21, 2014, Plaintiff was served half cooked cheesy rotini because of a hasty attempt to make more food after the supply had run out. On August 3, 2014, Plaintiff saw another prisoner grab two pieces of chicken from the serving tray with his bare hand. An Aramark employee observed the food theft and took the chicken away from the prisoner. Plaintiff asked Aramark employees "what about the other pieces of chicken in the pantry that may have been touched by [the] prisoner?" However, the Aramark food service steward served the remaining pieces of chicken. Plaintiff asserts that the "whole pantry of chicken should have been taken off the serving line and thrown away . . . because the remaining pieces of chicken were contaminated." Plaintiff contends that this conduct violated the Michigan Public Health Code, as well as Policy Directive 04.07.100.

On September 9, 2014, the chow hall again ran out of food and employees rushed to make more sloppy joe meat. Plaintiff claims that he was served uncooked, red sloppy joe meat. On September 28, 2014, the chow hall ran out of chicken and chicken was subsequently served before

it was properly cooked. Plaintiff claims that undercooked chicken was also served by Aramark employees on November 23, 2014. On November 25, 2014, Plaintiff saw a kitchen worker pull a plastic glove out of the bread pudding. Plaintiff told Aramark worker Ms. Plount that the pan of bread pudding needed to be thrown away, but Ms. Plount did not respond and continued to serve the bread pudding to prisoners.

On December 14, 2014, Aramark served tacos for dinner. Plaintiff ate two tacos and subsequently became ill. On December 15, 2014, Plaintiff asked Defendant Lewis about the taco meat and was told that it consisted of ground up leftover meat from the salisbury meat served on December 10, 2014. Plaintiff states that he filed a grievance and that the grievance response indicated that 1400 portions of taco meat had been served, and that he was the only prisoner who became ill. On December 22, 2014, Plaintiff found a piece of plastic glove in his cookie. On December 26, 2014, Plaintiff observed prisoner Freeman pull a piece of plastic out of his cookie.

On January 22, 2015, Plaintiff filed a step I grievance asserting that Aramark was in violation of several food code regulations, and was serving food under conditions which pose a substantial risk of serious harm to Plaintiff. Plaintiff stated that the trays were not being properly cleaned and that the backs of the trays had a buildup of "calcium/lime, soap scum/residue buildup." Plaintiff further stated that the trays were being stacked on top of each other while still wet, which causes bacteria to form on the eating surface. Plaintiff also complained that some of the utensils were bent, chipped, and flaking, so that they did not have a smooth surface and could not be properly cleaned. On June 30, 2015, Defendant McMullen responded to Plaintiff's grievance by stating, "we will have our dish room team detail the trays, and the ones with cuts or scratches will be removed from service."

Plaintiff filed a step II grievance appeal on August 4, 2015, stating that the problem had not been entirely resolved. The step II respondent found that efforts had been made to rectify the problem. The response also noted that Aramark was no longer under contract with the MDOC, and that the new food contractor was Trinity Food Group. Plaintiff filed a step III appeal, conceding that an effort had been made, but that the problem had not been solved because some of the trays and utensils continued to be damaged and were not properly cleaned and disinfected. On August 19, 2015, Plaintiff received a step III response from Richard D. Russell, denying the grievance appeal.

On September 5, 2015, Trinity Food Group was serving pizza and french fries for lunch. Plaintiff states that while waiting to be served, he asked about the condition of the trays and utensils and that Defendant Lewis told him that they had all been replaced. When Plaintiff received his food tray, he noticed that it was not clean and had food from a previous meal on it. Plaintiff showed it to Officer Berry, who told Plaintiff to get a new tray of food. Plaintiff claims that these types of incidents created tension and hostility in the food service area, which culminated in Prisoner Robertson assaulting two female food service workers.

Plaintiff has also filed three motions to amend, along with "proposed amended complaints," which are actually attempts to supplement his original complaint. Therefore, the Court will grant Plaintiff's motions (ECF Nos. 6, 7, and 9), and will consider the supplemental information in these proposed filings as part of the complaint in this case. In the first (ECF No. 6), Plaintiff states that Defendants were aware of the problems with the food service and failed to properly supervise or take corrective action. Plaintiff also claims that Defendants falsified records in response to Plaintiff's grievances.

In the second proposed amended complaint (ECF No. 7), Plaintiff states that the number of complaints filed by numerous prisoners were sufficient to inform Defendants of the conditions in food service, and that the ongoing conditions constituted deliberate indifference. Plaintiff also notes that the complaints regarding food service were brought up in a Warden Forum Meeting and a Food Service Agenda Meeting, as well as in the context of civil litigation. Plaintiff states that the unsanitary conditions hindered his ability to recover from his illnesses, which included Hepatitis C, migraines, mental distress, and digestive disorders. On August 12, 2015, Plaintiff was diagnosed with Type 2 Diabetes as a result of eating junk food from the commissary because of the unsanitary conditions in Food Service. Plaintiff also suffered from eye problems secondary to Diabetes, and high triglycerides and cholesterol. Plaintiff alleges that on October 6, 2015, he saw Psychiatrist Dr. McQueeney at Community Mental Health regarding his emotional distress. Dr. McQueeney increased Plaintiff's Prozac dosage and discussed placing Plaintiff back on Wellbutrin. Dr. McQueeney also asked Plaintiff if he was losing weight due to the "food situation," and Plaintiff replied that he was eating a lot of junk food from the Prison Commissary.

In the third proposed amended complaint (ECF No. 9), Plaintiff notes that research done by "The Prison VoiceWashington report" for a March 3, 2017 article on prison food shows that the food is not only gross, but nutritionally inadequate. The article (ECF No. 9-2) focuses on prisons in the state of Washington, but also notes that in a Michigan report, Corrections Officers reported frequent deviations from the menu, especially watering down recipes and serving small portions, making it impossible for inmates to get the nutrients agreed upon by contract. Plaintiff relies on the report's conclusions that the food served in prisons exacerbates and causes illnesses, such as obesity, heart disease, hypertension, and diabetes. Plaintiff asserts that all of the named Defendants knew

of and disregarded an excessive risk to the health and safety of Plaintiff and other prisoners. Plaintiff states that conditions at the Kinross Correctional Facility (KCF) led to a prison riot. Finally, Plaintiff alleges that Defendants have placed him in four-point restraints for hours without access to the toilet, causing Plaintiff to suffer pain and emotional distress.

Plaintiff claims that Defendants' conduct violated his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As noted above, Plaintiff claims that Defendants violated his rights under the Eighth Amendment. "[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate ... food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 960, 954 (6th Cir. 1987). Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided

contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01–17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566. Plaintiff in this case claims that he received undercooked and/or raw food on four occasions because food service workers had run out of food and were in a rush to replenish food items so that prisoners could be served. Plaintiff also claims that he found part of a plastic glove in a cookie on one occasions, and observed other individuals pull plastic gloves from food items on two other occasions. However, Plaintiff does not allege that these incidents caused any problems with his health, or that the day-to-day meals he received were inadequate to sustain his health. Plaintiff contends that his concerns with the meals served by food service caused him to purchase much of his food from the commissary, and that he was diagnosed with diabetes.

However, Plaintiff's complaint fails to show that he could not have received enough healthy food as part of the regular meal program to necessitate him purchasing food from the commissary. The fact that Plaintiff chose to do so out of a fear that the food was unhealthy does not constitute an Eighth Amendment deprivation. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

As noted above, Plaintiff does allege that he became ill after eating tacos on December 14, 2014. However, no other prisoners reported illness as a result of eating the tacos. Moreover, even if Plaintiff became ill on one occasion, such an allegation does not constitute the sort of serious deprivation that rises to the level of an Eighth Amendment violation. In numerous cases, courts have held that a single incident or occasional instances of spoiled food or food poisoning does not amount to an Eighth Amendment violation. *See Green v. Atkinson*, 623 F.3d 278, 281 (5th Cir. 2010) ("A single incident of food poisoning . . . does not constitute a violation of the constitutional rights of the prisoner affected." (footnote omitted)); *Charvis v. Fairman*, 51 F.3d 275 (7th Cir. 1995) (occasional service of spoiled food cannot be said to deprive inmates of basic nutritional needs); *Balcar v. Smith*, No. 3:16-CV-P428-DJH, 2017 WL 380931, *5 (W.D. Ky. Jan. 26, 2017) (holding that occasional service of spoiled food does not violate Eighth Amendment); *Velthuyson v. Aramark Corr. Servs., Inc.*, No 2:24-cv-192, 2017 WL 236191, *2 (W.D. Mich. Jan. 19, 2017) (a number of isolated instances of being served spoiled or cold food do not constitute a sufficiently serious deprivation to implicate the Eighth Amendment); *Wilson v. Byrd*, No. 15-00160-KD-N, 2016 WL 1573265, at *7 (S.D. Ala. Mar. 14, 2016) ("Taking Plaintiff's allegation as true, that he became ill from tainted food served at Holman on December 26, 2013, does not, alone, amount to a constitutional deprivation."); *Bennett v. Misner*, No. 02-1662-HA, 2004 WL

2091473, at *20 (D. Or. Sept. 17, 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eight Amendment violation."), *aff'd*, 180 F. App'x 732 (9th Cir. 2006); *Seymour/Jones v. Oldt*, No. 90-1583, 1990 WL 29721, at *1 (E.D. Pa. Mar. 16, 1990) (holding that the plaintiff failed to state a claim because "a single unintentional instance of food poisoning, which, though undoubtedly unpleasant, does not rise to the level of a violation of his civil rights").

As noted above, Plaintiff also claims that he found himself in a prison riot, which was the result of unhappiness with poor conditions at KCF, and that on one occasion he was left in four-point restraints for hours without toilet access or medical attention. However, Plaintiff fails to allege any specific allegations showing that any of the named Defendants acted with deliberate indifference in relation to these incidents. Therefore, these allegations do not support an Eighth Amendment claim.

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir.

2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there is a specific constitutional amendment that applies to Plaintiff's claims. As previously discussed, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his claims regarding food and prison conditions. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's

health and safety, the plaintiff's substantive due process claim was subject to dismissal). Consequently, Plaintiff's substantive due process claim will be dismissed.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: <u>July 17, 2017</u>   <u>/s/ Janet T. Neff</u>
　　　　　　　　　　　　　　　　Janet T. Neff
　　　　　　　　　　　　　　　　United States District Judge